

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| VERNON MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No.  4:04-CV-292 |
| PARIS PACKAGING, INC. and | § | |
| UNITED FOOD AND COMMERCIAL | § | |
| WORKERS INTERNATIONAL UNION | § | |
| LOCAL 540 | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

The following motions are pending before the court:

1.   Defendant UFCW Local 540's motion for summary judgment and supporting brief (docket entry #14);

2.   Plaintiff's motion for summary judgment and brief in support (docket entry #15);

3.   Plaintiff's response and brief in support to Defendant's motion for summary judgment (docket entry #16); and

4.   Defendant's response and opposition to Plaintiff's motion for summary judgment (docket entry #17).

Upon consideration of the motions, responses and applicable law, the court is of the opinion that the

motions for summary judgment should be granted in part.

## I. BACKGROUND

Paris Packaging, Inc. ("Paris Packaging") operates a unionized facility in Paris, Lamar

County, Texas.  Defendant Paris Packaging's Mtn. to Compel Arb. and Stay Proceedings, p. 1.  Paris

Packaging's employees are represented by the United Food and Commercial Workers International

Union Local 540 ("the Union").  Paris Packaging's Mtn. to Compel Arb. and Stay Proceedings, pp. 1-2.  Effective June 30, 1998, Paris Packaging and the Union entered into a collective bargaining agreement ("CBA").  Paris Packaging's Mtn. to Compel Arb. and Stay Proceedings, p. 2.  "The agreement contains grievance and arbitration provisions which require mandatory, binding arbitration of all disputes which involve the application or interpretation of the agreement."  *Id*.  On November 5, 1998, the CBA was modified to include over-the-road truck drivers and truck maintenance employees in the bargaining unit.  *Id*.

Paris Packaging hired Moore in January 1999 as an over-the-road truck driver.  *Id*.  On or about August 5, 1999, Moore suffered an injury during the course and scope of his employment with Paris Packaging.  Pl. Second Amd. Org. Pet., pp. 1-2.  As a result of his injury, Moore was absent from work for approximately three months.  Pl. Second Amd. Org. Pet., p. 2.  Moore initiated a workers' compensation claim for the sustained injury.  *Id*.

Moore returned to work in November 1999 with certain medical restrictions.  *Id*.  On or about January 31, 2000, Moore was directed to move equipment.  *Id*.  Such an order contradicted his physician's no lifting restriction.  *Id*.  Apparently, Moore moved the equipment as directed and subsequently sustained another injury. *Id*.  Moore again sought and obtained workers' compensation benefits as a result of the injury.  Paris Packaging's Mtn. to Compel Arb. and Stay Proceedings, p. 2, n. 1.  Moore remained continuously absent from work through July 31, 2000.  Paris Packaging's Mtn. to Compel Arb. and Stay Proceedings, p. 2.  On October 17, 2000, Moore was terminated from his employment with Paris Packaging.  Pl. Second Amd. Org. Pet., p. 2.

According to Paris Packaging, Moore was terminated in accordance with the terms of the CBA and the attendance control policy.  Paris Packaging's Mtn. to Compel Arb. and Stay

Proceedings, p. 2.  Article 14, Section 1(a) of the CBA provides as follows:

> It is agreed that the Company shall have the right to discharge or otherwise discipline any employee regardless of his seniority, for just cause.  Just cause shall include, but not be limited to, the offenses as listed in the plant rules of the Company and attendnace [sic] control policy.

Local 540's Opposition to Pl. Mtn. to Remand, exh. 1.  The relevant portion of the attendance control policy provides as follows:

> Effective beginning April 3, 2000, any employee who is on leave from work at Paris Packaging, (the Company) for more than 180 calendar days, for any reason, will be terminated from his or her employment with the Company.

Local 540's Opposition to Pl. Mtn. to Remand, exh. 2.  Accordingly, Paris Packaging informed Moore that because he was absent from work for more than 180 calendar days (January 31, 2000 through July 31, 2000), his employment was being terminated.  Paris Packaging's Mtn. to Compel Arb. and Stay Proceedings, p. 2.

On January 28, 2002, Moore filed a lawsuit against Paris Packaging in the Sixth Judicial District Court of Lamar County, Texas alleging violations of Texas Labor Code section 451.001 for retaliatory discharge and discrimination for Plaintiff filing workers' compensation claims. Thereafter, on or about August 5, 2002, Paris Packaging moved to compel arbitration and stay proceedings based on the following provisions contained in the CBA:

> Except as otherwise provided in this agreement . . . should [a] dispute arise between an employee and the Company as to the application and interpretation of the provisions [sic] this Agreement, it shall be filed and processed through the procedure outlined herein.

> . . . Grievances . . . not settled [at the grievance procedure level] shall be appealed to arbitration with [sic] fifteen (15) days after presentation to the Company's Plant Manager or his representative.

> The decision of the arbitrator shall be final and binding on the Company, the Union,

3

and the employee or employees concerned.

Paris Packaging's Mtn. to Compel Arb. and Stay Proceedings, p. 5.

Initially, Paris Packaging convinced the state district court to compel arbitration and stay the proceedings in this case. *In re Paris Packaging, Inc.*, No. 06-04-00047-CV, *4 (Tex. App. – Texarkana 2004, *mandamus proceeding*). However, on September 5, 2003, Moore filed a motion to reconsider. *Id*. Moore argued that "forcing him to proceed with arbitration would violate his guarantee to due process of law because he is unable to pay for the arbitration services." *Id*.

At the February 19, 2004 hearing on Moore's motion to reconsider, Paris Packaging urged the state district court "to overrule Moore's motion on the basis of the following provision in the CBA that obligated Paris Packaging and the Union to bear the cost of the arbitrator:

> Any expenses incident to the services of the impartial arbitrator and the Association shall be borne equal[ly] by the Company and the Union. All other costs incidental to the arbitration proceedings shall be borne by the party incurring the cost."

*Id*. The state district court rejected the argument urged by Paris Packaging and granted Moore's motion to reconsider. *Id*. at *5. In its order, the state district court concluded that Moore did not have the means to pay for arbitration. *Id*. In so concluding, the state district court entered the following legal conclusions:

1.  It is unconstitutional and unconscienable [sic] to compel [Moore] to arbitration, when [he] does not have sufficient funds to pay the arbitrator.

2.  Requiring payment from someone who cannot afford to pay arbitration fees undermines remedial and deterrent function of the anti-discrimination law.

3.  [Moore] has no standing to request the union to pay his arbitration expenses as provided in the collective bargaining agreement.

*Id*.

Paris Packaging subsequently sought a writ of mandamus in the Sixth District Court of Appeals in Texarkana, Texas seeking to vacate the state district court's order on Moore's motion to reconsider. On May 25, 2004, the Sixth District Court of Appeals concluded that ". . . Section 3 of Article 5 of the CBA expressly requires Paris Packaging and the Union to pay for the services of the arbitrator in this dispute." *Id*. at *9 (footnote omitted). "The trial court's conclusion that Moore had no standing to enforce the payment provisions in the CBA represents a misapplication of the law to these facts and, thus, constitutes an abuse of discretion." *Id*.

In accordance with the opinion of the Sixth District Court of Appeals, the state district court vacated its prior order and entered the following order on May 28, 2004:

> The parties to this litigation are ordered to arbitration with the plaintiff's expenses to be paid by the United Food and Commercial International Union, Local 540, as provided by the union's collective bargaining agreement with Paris Packaging, Inc. that was effective June 30, 1998.

> All proceedings in this court are stayed pending resolution of the arbitration.

Union's Notice of Removal, exh. B.

However, on June 16, 2004, Moore learned that the Union would not be paying for his arbitration proceedings. The Union declined to incur the costs associated with the arbitration, citing Moore's failure to follow the CBA's administrative procedures. Union's Notice of Removal, exh. C.

In response, Moore filed his second amended original petition on or about July 14, 2004. In his amended pleading, Moore joined the Union as a party, alleging that the Union breached its duty of fair representation. Pl. Second Amd. Org. Pet., p. 9. The Union subsequently removed this case on August 11, 2004, asserting that Moore's claims were preempted by section 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185, because adjudication of Moore's claims would require the interpretation and application of the terms of the CBA in effect between Paris Packaging and the Union.[1]   On August 27, 2004, Moore filed a motion to remand, arguing that claims based on workers' compensation laws are within the exclusive jurisdiction of the state courts. On October 20, 2004, this court issued an order severing Moore's claims against Paris Packaging for retaliatory discharge and discrimination pursuant to § 451.001 of the Texas Labor Code and remanding the same to the Sixth Judicial District Court of Lamar County, Texas.   This court, however, retained jurisdiction over Moore's claim against the Union for breach of the duty of fair representation.

On January 14, 2005, the Union filed its motion for summary judgment.  The Union primarily argues that Moore failed to exhaust the procedures enumerated in the CBA.  On January 18, 2005, Moore filed his motion for summary judgment.  In his motion, Moore primarily argues that the Union breached its duty of fair representation by failing to investigate his claims, represent him and pay its share of the arbitration fees.  Interestingly, both Moore and the Union mention, albeit in passing, that the state court erred by injecting the Union into this matter.

## II.  SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A dispute about a material fact

---

[1]Paris Packaging did not file a notice of removal.

is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id.* at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

### III. DISCUSSION

The issue before this court is whether the Union breached its duty of fair representation by failing to investigate Moore's statutory retaliatory discharge claim and, further, by failing to represent him on the same. In order to decide this issue, the court must first determine if Moore was required to submit his workers' compensation retaliatory discharge claim to the grievance-arbitration procedure provided for in the CBA governing his employment. The court concludes "that the CBA's

7

mandatory grievance-arbitration procedure does not cover [workers' compensation retaliatory discharge] claims." *Bush v. Carrier Air Conditioning*, 940 F.Supp.1040, 1043 (E.D. Tex. 1996). Accordingly, the Union was not required to investigate Moore's claims and Moore is not foreclosed from seeking relief in a judicial forum.

### A.     *Relevant portions of the CBA*

Article 8 of the CBA provides as follows:

> The Employer . . . agree[s] not to unlawfully discriminate against any individual with respect to compensation or terms and conditions of employment because of such individual's . . . disabled condition.  Nor will [the Employer] limit, segregate or classify employees in any way to unlawfully deprive any individual employment opportunity because of . . . disabled condition. . . .

Defendant Paris Packaging's Mtn. to Compel Arb. and Stay Proceedings, p. 7.  Article 4 of the CBA sets forth the grievance procedure as follows:

> Article 4.  Grievance Procedure.  Section 1.  Except as otherwise provided in this agreement, and excluding the prerogatives of management reserved solely to the Company under Article 2 of this Agreement, should a dispute arise between an employee and the Company as to the application and interpretation of the provisions of this Agreement, it shall be filed and processed through the procedure outlined herein.

> Section 2.  The Union shall notify the Company in writing of the names of such stewards selected.

> Section 3.  Grievances to be considered must be initiated promptly, or in any event within seven (7) calendar days after the time of the alleged infraction for all employees.  It is understood that all grievances will be investigated after an employee's regularly scheduled shift is completed and the employee will continue to work under existing conditions until disposition of grievance occurs.

> Step 1.  The aggrieved employee shall present the grievance orally to the foreman, and if desired, the employee may be accompanied by a union steward.  The foreman shall answer the grievance within two (2) working days after receiving the grievance.

Step 2.  The foreman's verbal response shall be final unless within five (5) working days after having received such answer, the grievance is in writing, dated, signed by the employee(s) involved and the chief steward and presented to the head of the department.  A meeting over such grievance shall be held within five (5) working days between the head of the department, the employee(s) involved, the shop steward and the chief steward.  The head of the department's written answer will be given to the chief steward within two (2) working days of that meeting.

Step 3.  The head of the department's answer shall be final unless within five (5) working days after receiving such answer the chief steward appeals the grievance in writing to the Company's Plant Manager or his representative.  Upon such appeal the grievance shall be discussed within ten (10) working days at a meeting between the Company's Plan Manager or his representative and the Union's International representative or his representative.  Grievances discussed in such meetings and not settled shall be appealed to arbitration within fifteen (15) days after presentation to the Company's Plant Manager or his representative.

Section 4.  Whenever a grievance is not appealed to the next step, it shall be deemed resolved with no further appeal.  Time limits in any step above may be extended by mutual consent of the parties.

Union's Mtn. for Summary Judgment, pp. 4-5.  Article 5 of the CBA sets forth the arbitration

procedure as follows:

Article 5.  Arbitration.  Section 1.  The notice of appeal to arbitration shall be given in writing by the party appealing the case to the other party within fifteen (15) working days after presentation to the Plant Manager or his representative in Step 3 of GRIEVANCE PROCEDURE.

Section 2.  If the two (2) parties cannot agree on the statement regarding the issue to be arbitrated, then both parties shall submit separate statements to the arbitrator.  The parties shall immediately and jointly request the Federal Mediation and Conciliation Service to provide a list of five (5) arbitrators.  Each party shall strike two (2) of the names from the list of five (5), and the one (1) remaining shall be appointed as the impartial arbitrator.  The party giving notice to appeal to arbitration shall strike the first two (2) names.

Section 3.  Any expenses incident to the services of the impartial arbitrator and the Association shall be borne equal by the Company and the Union.  All other costs incidental to the arbitration proceedings shall be borne by the party incurring the cost.

Section 4.  An arbitrator to whom a case is appealed under this procedure shall have

9

no jurisdiction or authority to change, alter, amend, add to, or subtract from any of the provisions of this Agreement, but shall only have jurisdiction and authority to interpret, apply or determine compliance with the provisions of the Agreement.  The decision of the arbitrator shall be final and binding on the Company, the Union, and the employee or employees concerned.  The arbitrator shall be bound by the provisions of this Agreement.

Section 5.  Only one (1) grievance may be heard before the designated arbitrator, except where the parties agree otherwise.

Union's Mtn. for Summary Judgment, pp. 5-6.

It is undisputed that Moore never personally requested that the Union represent him at any stage of his proceedings against Paris Packaging.  It is further undisputed that Moore did not request the Union to intervene on his behalf during the state court proceedings.

### B.     Relevant case precedent

In *Coleman v. Houston Lighting and Power Co.*, 984 F.Supp. 576 (S.D. Tex. 1997) (Crone, J.), the court was presented with a factual scenario substantially similar to the instant action.  In reviewing that case, the court made an in-depth review of the pertinent case law, a portion of which is included herein.

"The *Alexander [v. Gardner-Denver Co.]* Court distinguished an employee's individual statutory rights from any contractual rights he may have as an employee under a collective bargaining agreement:

In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement.  By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress.  The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums."

*Coleman*, 984 F.Supp. at 579, quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-50, 94

S.Ct. 1011, 1020-21, 39 L.Ed.2d 147 (1974).

"The Court rejected the notion that an employee can prospectively waive his right to pursue his statutory claims in federal court by virtue of the terms of a collective bargaining agreement:

> We are also unable to accept the proposition that petitioner waived his cause of action under Title VII. To begin, we think it clear that there can be no prospective waiver of an employee's rights under Title VII. It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike. These rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members. Title VII, on the other hand, stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities. Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver."

*Id.*, quoting *Gardner-Denver*, 415 U.S. at 51-52, 94 S.Ct. at 1021-22. "In light of these considerations, the Supreme Court concluded that 'the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII.'" *Id.*, quoting *Gardner-Denver*, 415 U.S. 59-60, 94 S.Ct. at 1025.

The Supreme Court, however, in *Gilmer v. Interstate / Johnson Lane Corp.*, 500 U.S. 20, 35, 111 S.Ct. 1647, 1656-57, 114 L.Ed.2d 26 (1991), "held that a discharged employee's claim under the Age Discrimination in Employment Act ("ADEA") could be subjected to compulsory arbitration pursuant to an arbitration agreement contained in a securities registration application." *Id*. "The Supreme Court, citing cases decided under the Sherman Act, the Securities Act of 1933, the

11

Securities Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act, stated, 'It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act] ('FAA').'" *Id*. at 580, quoting *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652.  "'By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Id*., quoting *Gilmer*, *supra*. (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).  While all statutory claims may not be appropriate for arbitration, "'[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Id*., quoting *Gilmer, supra*. (quoting *Mitsubishi Motors Corp*., 473 U.S. at 628, 105 S.Ct. at 3355).

In distinguishing *Gardner-Denver* and its progeny from *Gilmer*, the *Gilmer* Court elaborated as follows:

> There are several important distinctions between the *Gardner-Denver* line of cases and the case before us.  First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims.  Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims.  Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions.  Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings.  An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case.  Finally, those cases were not decided under the FAA, which, as discussed above, reflects a 'liberal federal policy favoring arbitration agreements.'

*Id.*, quoting *Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1656 (citations omitted).[2]

Subsequent to the Supreme Court's decision in *Gilmer*, the Fifth Circuit has not addressed the issue presented herein – whether an employee must exhaust the grievance and arbitration procedures contained in a collective bargaining agreement prior to filing suit based upon a statutory claim. *See Coleman*, 984 F.Supp. at 581. "The district courts within the Fifth Circuit are split on this issue." *Id.* "The most recent decisions have held that an employee covered by a collective bargaining agreement, who has failed to exhaust his contractual remedies, may still seek judicial relief for violations of federal employment discrimination statutes." *Id.*, citing *Bush v. Carrier Air Conditioning*, *supra*. (remaining citations omitted). "[A]n employee's failure to exhaust contractual remedies under a collective bargaining agreement does not bar him from filing suit to assert federal statutory discrimination claims." *Id.* at 582. Likewise, an employee's failure to exhaust contractual remedies under a collective bargaining agreement should not bar him from filing suit to assert a violation of § 451.001 of the Texas Labor Code. Moreover, neither side here has made the argument that this collective bargaining agreement contains a requirement to arbitrate statutory claims, similar to the situation in the *Gilmer* case.

### C. *Analysis*

In the case at bar, Moore unsuccessfully challenged the applicability of the CBA's arbitration clause at the state court level. Now, Moore is seeking to enforce the very clause that he attempted to avoid. It was not until the Union declined to pay the requisite arbitration fees that Moore added the Union as a Defendant in his state court lawsuit against Paris Packaging. But for the Union's non-

---

[2]The Supreme Court has not yet resolved the tension between *Gardner-Denver* and *Gilmer*. *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 76-77, 119 S.Ct. 391, 395, 142 L.Ed.2d 361 (1998).

compliance with the state court order to pay its portion of the arbitration fees, Moore would not have alleged his claim for breach of the duty of fair representation against the Union.  Accordingly, to determine whether the Union breached its duty of fair representation, the court must decide if Moore was required to follow the grievance and arbitration procedures contained within the CBA prior to filing his state court action.

"[T]his court is of the opinion that [*Gardner-Denver*] remains the controlling law, as this case arises in the context of an arbitration clause contained in a collective bargaining agreement." *Coleman*, 984 F.Supp. at 584.  Although arbitration may be a viable option, the Texas Labor Code does not preclude an employee covered by a collective bargaining agreement from availing himself of a judicial forum for resolving employment discrimination claims arising under § 451.001 of the Texas Labor Code.[3]  *See id.*  Accordingly, Moore may seek redress in state court for the alleged violation of § 451.001 independent of any contractual remedies he may have under the CBA.  *See id.*  Although Moore did not pursue his contractual remedies prior to bringing suit in state court, "'the actual submission of [the] grievance to arbitration . . . does not alter the situation.'" *Id.*, quoting *Gardner-Denver*, 415 U.S. at 52, 94 S.Ct. at 1021 (remaining citations omitted).  "'[T]he same reasoning applies to a plaintiff who has chosen not to participate in the grievance procedure.'" *Id.*,

---

[3]"Plaintiffs have an independent right to file workers' compensation claims without fear of losing their jobs. As we previously stated:

> [T]he right to be free from retaliatory discharge for pursuing workers' compensation exists for Jones, as it did for the employee in Lingle, independently of the CBA.  *The right originates in the statute which Texas has enacted to protect employees seeking compensation for work-related injuries.  It does not depend on any right or duty originating in the CBA.*  Jones' right would exist even if there were no CBA.  The right that Jones claims accrues to employees 'as individual workers, not as members of a collective organization.'"

*Trevino v. Ramos*, 197 F.3d 777, 781 (5th Cir. 1999), quoting *Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1090, *reh'g denied*, 936 F.2d 789 (5th Cir. 1991)(emphasis added).

14

quoting *Gardner-Denver*, 415 U.S. at 52, 94 S.Ct. at 1021.  "'Implicitly, the failure of the worker to pursue a CBA's grievance procedure would change neither the concerns nor the holding of the [*Gardner-Denver*] case.  Thus, the necessary extension of [*Gardner-Denver*] is that an employee may exercise his rights in either or both forums.'"  *Id.* (citation omitted).

Here, the CBA states in Article 8 that "[t]he Employer . . . agree[s] not to unlawfully discriminate against any individual with respect to compensation or terms and conditions of employment because of such individual's . . . disabled condition.  Nor will [the Employer] limit, segregate or classify employees in any way to unlawfully deprive any individual employment opportunity because of . . . disabled condition. . . ."  *See Coleman*, 984 F.Supp. at 584.  Article 8, however, does not mention retaliation in its list of prohibited practices.  *See id.*

Moreover, under the CBA, "[a]n arbitrator to whom a case is appealed under this procedure shall have no jurisdiction or authority to change, alter, amend, add to, or subtract from any of the provisions of this Agreement, but shall only have jurisdiction and authority to interpret, apply or determine compliance with the provisions of the Agreement."  *See id.* at 584-85.  "Thus, the arbitrators' authority is limited to questions of contract application and interpretation based on the language of the agreement and the 'law of the shop.'"  *Id.* at 585.  Here, the arbitrators are not vested with the power to determine whether the company has violated § 451.001 of the Texas Labor Code since the arbitrators' authority is drawn solely from the CBA, not from external sources.  *See id.* Because the CBA does not authorize the arbitrators to decide state statutory claims, it is inappropriate to require Moore to seek redress for retaliatory discharge under the contractual grievance and arbitration procedure.  *See id.*  "If [Moore] proves that he is a victim of unlawful employment discrimination, he is entitled to relief under the 'law of the land,' not merely the 'law

15

of the shop.'" *Id*.

Further, only the Union and Paris Packaging, not Moore, can invoke the contractual arbitration procedure.  "Thus, the employee 'has to persuade the union to prosecute his grievance and if it loses in the early stages of the grievance proceedings to submit the grievance to arbitration.'" *Id*. (citation omitted).  Additionally, the Union is "obligated to bear half the cost of arbitration, which gives it an incentive against pressing claims to arbitration." *Id*. (citation omitted).  "Thus, due to the difference between contractual rights under a collective bargaining agreement and individual statutory rights, there is a 'potential disparity in interests between a union and an employee' regarding the prosecution of the employee's individual statutory rights." *Id*. (citation omitted). "Under these circumstances, requiring [Moore] to look to the CBA as his exclusive remedy for [retaliation] places too great a burden on the exercise of his statutory rights under [§ 451.001 of the Texas Labor Code.]  *Id*. at 586.

Finally, the FAA is not applicable.  The Fifth Circuit has determined that the FAA "'does not authorize the judicial enforcement of a contractual undertaking to submit to arbitration grievances arising under a collective bargaining agreement.'"  *Id*. at 587, quoting *Lincoln Mills v. Textile Workers Union*, 230 F.2d 81, 86 (5th Cir. 1956), *rev'd on other grounds*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

The court concludes that Moore has not waived his individual state statutory rights under § 451.001 of the Texas Labor Code by failing to exhaust the grievance and arbitration procedures contained within the CBA.  *See id*.  Since Moore was not obligated to exhaust the grievance and arbitration procedures under the CBA, this court is not required to reach the issue of whether the Union breached its duty of fair representation.

16

## IV. CONCLUSION

It is, therefore, ORDERED that Defendant UFCW Local 540's motion for summary judgment and supporting brief (docket entry #14) and Plaintiff's motion for summary judgment and brief in support (docket entry #15) are hereby GRANTED IN PART.  Moore may continue to pursue his claims against Paris Packaging for retaliatory discharge and discrimination pursuant to § 451.001 of the Texas Labor Code in the Sixth Judicial District Court of Lamar County, Texas without proceeding to arbitration.

**SIGNED this the 16th day of September, 2005.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

17